UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JASHAAN EDWARDS,

    Plaintiff,      Case No. 2:23-cv-160

v.              Honorable Maarten Vermaat

HEIDI WASHINGTON et al.,

    Defendants.
_____/

**OPINION**

   This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, Plaintiff has been granted leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

   This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

   "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 5).

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues MDOC Director Heidi Washington, MDOC Deputy Director Unknown Party, MDOC Grievance Supervisor Carolyn Nelson, and MDOC official Richard Russell, and the following URF staff: Warden Unknown Corrigan, Deputy

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Warden Unknown Batho, Captain Unknown Bigger, Sergeant Unknown Anderson, Grievance Supervisor/Coordinator Unknown McLean, Resident Unit Manager Unknown Corey-Spiker, and Resident Unit Manager Unknown Plumm. Defendants are each sued in their individual and official capacities.

Plaintiff alleges that, in March 2022, while at the Marquette Branch Prison (MBP), Plaintiff was placed in protective custody because of a "credible threat to his person at MBP." (ECF No. 1, PageID.2, 5, 6.) Plaintiff was moved to URF in June of 2022. (*Id.*) On July 5, 2022, Plaintiff was sitting at a table in the URF dayroom when Plaintiff was attacked by non-party Prisoner Matthews and "continuously beaten until staff intervened." (*Id.*, PageID.2; ECF No. 1-1, PageID.15.) Plaintiff was taken to segregation. (ECF No. 1, PageID.2.)

Following the July 5, 2022, assault, Defendant Anderson generated an MDOC form CSJ-686 "Request for Protection/Investigation Report." (*Id.*, PageID.2, 6; ECF No. 1-1, PageID.15.) On the form, Defendant Anderson indicated: "[n]o prior requests for protection found." (ECF No. 1-1, PageID.15.) Nonetheless, Defendant Anderson requested protection on Plaintiff's behalf. (*Id.*) In reviewing Defendant Anderson's investigation, the Security Classification Committee (SCC), which included Defendants Batho and Plum, noted that Plaintiff was interviewed but declined to participate in the investigation. (*Id.*) Ultimately, the SCC, including Defendants Batho and Plumm, denied protective custody, and returned Plaintiff to level IV general population in the same cell that Plaintiff had been in before the July 5, 2022, attack. (*Id.*; ECF No. 1, PageID.2, 6.)

Following Plaintiff's release from segregation on July 6, 2022, an unknown staff member took Plaintiff to a secure area where Plaintiff notified the staff member that he feared he would be attacked. (ECF No. 1, PageID.2.) Plaintiff claims that nothing was done. (*Id.*)

4

From July 6, 2022, until July 8, 2022, Plaintiff hid inside his cell, missing meals, recreation, and shower opportunities. (*Id.*) When Plaintiff left his cell for lunch on July 8, 2022, Plaintiff was attacked. (*Id.*) That day, Defendant Bigger generated another MDOC CSJ-686 form, indicating that Plaintiff had "no prior protection history" despite the fact that Plaintiff had three prior protection requests, including one at URF in 2013, one at MBP, and one at URF on July 5, 2022. (*Id.*, PageID.6.)

When Plaintiff reentered segregation on July 8, 2022, unidentified staff told Plaintiff that Plaintiff should "pay his tab, pay [somebody] or fight back." (*Id.*, PageID.3.) On July 11, 2022, Plaintiff reported this to the SCC, which included Defendants Batho and Corey-Spiker. (*Id.*, PageID.3, 6.) Defendant Batho responded by asking Plaintiff whether the conflicts were about drugs and whether Plaintiff "owed anyone." (*Id.*, PageID.3.) When Plaintiff protested Defendant Batho's attempts to place Plaintiff back into general population, Defendant Batho told Plaintiff that Plaintiff would remain in segregation for an extended period of time. (*Id.*) The SCC, including Defendants Batho and Corey-Spiker, observed that Plaintiff had "been assaulted twice in a week" and, therefore, placed Plaintiff in protective custody. (ECF No.1-1, PageID.14.)

Plaintiff remained in segregation at URF from July 8, 2022, until his transfer on August 9, 2022. (ECF No. 1, PageID.6.) He alleges that, using the medical kite system, he "continuously complained about concussion like symptoms [but] was not closely monitored and was almost placed on antipsychotic medications." (*Id.*, PageID.3, 6.) Plaintiff also claims that, while in segregation, Plaintiff was treated "like a [punitive] disciplinary prisoner." (*Id.*)

Plaintiff filed a grievance related to his complaint allegations; however, Defendant McLean initially refused to provide Plaintiff with a step two appeal form. (*Id.*) Plaintiff received the step two and three appeal forms in September 2022. (*Id.*)

5

Plaintiff claims that Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights. (*Id.*, PageID.2.) He seeks declaratory relief and compensatory and punitive damages. (*Id.*, PageID.1, 8, 9.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

6

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability

As a preliminary matter, Plaintiff acknowledges that "MDOC Washington, MDOC Deputy Director Unknown, MDOC Nelson, MDOC Russell, URF Corrigan, URF Mclean, URF Bigger, URF Anderson, URF Bathco (or Batho), URF Corey-Spiker, [and] URF Plumm et al. did not commit violation or assault." (ECF No. 1, PageID.4 (capitalization corrected).) However, Plaintiff alleges in a conclusory manner that each Defendant "became responsible when he/she failed to correct constitutional violations and correct them in the course of their supervisory duties/responsibilities." (*Id.*) As explained below, such allegations are insufficient to give rise to a plausible claim under § 1983.

Government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts whatsoever to suggest that Defendants Washington, Deputy Director Unknown Party, Nelson, Russell, and Corrigan were personally involved in the alleged violations of Plaintiff's constitutional rights. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Furthermore, with respect to all Defendants, Plaintiff fails to allege any facts that would suggest that Defendants encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct such that Defendants could be held liable on a theory of supervisory liability. Accordingly, for all of the reasons set forth above, the Court will dismiss all claims against Defendants Washington, Deputy Director Unknown, Nelson, Russell, and Corrigan. Additionally, the Court will dismiss Plaintiff's claims against the remaining Defendants to the extent they are premised upon allegations of supervisory liability.

.

### B. Eighth Amendment Claims

Plaintiff first brings claims for violation of his Eighth Amendment rights. (ECF No. 1, PageID.2.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge

9

of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Failure to Protect

Plaintiff seeks to hold Defendants Anderson, Batho, and Plumm liable for failing to protect Plaintiff from the July 8, 2022, attack, claiming that placing Plaintiff in "the same cell where he was just attacked" following his release from segregation constitutes a violation of his Eighth Amendment rights. (ECF No. 1, PageID.2.) Specifically, Plaintiff alleges that Defendant Anderson failed to indicate that Plaintiff had previously been placed in protective custody when noting on the MDOC CSJ-686 form: "[n]o prior requests for protection found." (ECF No. 1-1, PageID.15; ECF No. 1, PageID.2, 6.) Plaintiff also alleges that Defendants Batho and Plumm denied Plaintiff protective custody and returned Plaintiff to level IV general population where Plaintiff was again assaulted on July 11, 2022. (ECF No. 1-1, PageID.15; ECF No. 1, PageID.2, 6.)

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment's prohibition of "cruel and unusual punishments." *Farmer*, 511 U.S. at 832. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations omitted).

To properly plead liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate

10

indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

### a. Defendant Anderson

The facts alleged show only that Defendant Anderson was possibly[2] incorrect in stating on the CSJ-686 form: "[n]o prior requests for protection found." (ECF No. 1-1, PageID.15; ECF No. 1, PageID.2, 6.) As explained below, Plaintiff has not alleged facts that would plausibly suggest that, in making this notation, Defendant Anderson was deliberately indifferent to a subsequent attack.

First, there is nothing to indicate that Defendant Anderson in fact discovered any prior requests for protection during his investigation or that he was otherwise aware that Plaintiff had been previously placed in protective custody. At best, the facts contained within the complaint suggest that Defendant Anderson was negligent in not uncovering Plaintiff's prior placement in protective custody. Allegations of negligence, however, fall short of the deliberate indifference

---

[2] Plaintiff does not allege that he made any prior requests for protection during his 2022 confinement at URF. Although Plaintiff alleges that he was under protective custody at a prior facility (ECF No. 1-1, PageID.16) and during a 2013 stay at URF (*id.*, PageID.17), there is nothing to suggest that these instances of protective custody would have had any bearing on Plaintiff's safety while at URF in 2022.

11

required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Second, despite not finding any prior requests for protection during his investigation, Defendant Anderson requested protection on Plaintiff's behalf (ECF No. 1-1, PageID.15), belying any claim that Defendant Anderson was deliberately indifferent to a substantial risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 844–45 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.") Therefore, the Court will dismiss Plaintiff's failure to protect claim against Defendant Anderson.

   b.   **Defendants Batho and Plumm**

Plaintiff faults Defendants Batho and Plumm for returning Plaintiff to the level IV general population and returning Plaintiff to the same cell as prior to the July 5, 2022, assault. (ECF No. 1, PageID.6.) However, Plaintiff has not alleged that, in so doing, Defendants Batho and Plumm were subjectively aware that their actions would pose a serious risk of substantial harm.

Defendants Batho and Plumm were aware only that Plaintiff had been assaulted by Prisoner Matthews while in the level IV dayroom. (ECF No. 1-1, PageID.15.) Plaintiff does not allege that he requested to be placed in protective custody following the July 5, 2022, assault. Plaintiff also does not allege that Prisoner Matthews was permitted to remain in Plaintiff's unit following the assault or that Prisoner Matthews otherwise posed any further threat to Plaintiff's safety.

Three days later, Plaintiff was attacked by non-party Prisoner Curtis. (*Id.*, PageID.14.) There is nothing to suggest a connection between the July 5, 2022, and July 8, 2022, assaults, and certainly no facts that would suggest that Defendants Batho and Plumm were subjectively aware that Plaintiff faced a substantial risk of assault by Prisoner Curtis or by prisoners within level IV more generally.

12

Plaintiff alleges that, once released back into the level IV general population, he told an unknown staff member that he was afraid that he would be attacked, and that, from July 6, 2022, until July 8, 2022, Plaintiff hid inside of his cell. (ECF No. 1, PageID.2.) However, the complaint gives no indication that any named Defendant was aware of Plaintiff's behavior or that Plaintiff had expressed fears of being attacked. For these reasons, Plaintiff's claims against Defendants Batho and Plumm for failure to protect Plaintiff from the July 8, 2022, assault will be dismissed.

### 2.     **Verbal Harassment**

Liberally construed, Plaintiff appears to allege that Defendant Batho wrongfully questioned Plaintiff about the nature of his conflicts with other prisoners during Plaintiff's July 11, 2022, meeting with the SCC. (ECF No. 1, PageID.3 (stating that Defendant Batho "antagonized [P]laintiff[,] yelling at him is this about drugs at the facility . . .").) For the reasons set forth below, to the extent that Plaintiff attempts to bring an Eighth Amendment claim premised upon this verbal exchange, Plaintiff's claim will be dismissed.

Although Plaintiff alleges that Defendant Batho "antagonized" Plaintiff by asking whether Plaintiff's conflicts with other prisoners involved drugs or whether Plaintiff owed anyone, Plaintiff fails to allege any facts regarding how Defendant Batho's questions "antagonized" Plaintiff." (ECF No. 1, PageID.3.) "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Even if Defendant Batho's questions were irritating or unprofessional, allegations of verbal harassment by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Id.* at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits). Accordingly,

13

the Court will dismiss any Eighth Amendment claim concerning Defendant Batho's July 11, 2022, line of questioning.

### 3. Placement in Segregation

Plaintiff alleges that his placement in segregation following the July 8, 2022, attack was akin to a "pun[i]tive disciplinary" measure. (ECF No, 1, PageID.3.) He claims that Defendant Bigger "generated a[n] MDOC CSJ-686 form [and] [a]gain falsified information crucial to plaintiff's placement." (*Id.*, PageID.2.) Defendants Batho and Corey-Spiker then signed the CSJ-686 form which resulted in Plaintiff's placement in segregation as protective custody. (ECF No. 1-1, PageID.14.)

Even if this Court were to construe Plaintiff's complaint as raising an Eighth Amendment claim regarding his time in segregation, placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). It does not result in "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *See Rhodes*, 452 U.S. at 348 (citation omitted).

Plaintiff may have been denied certain privileges as a result of his placement in segregation, but he does not allege or show that he was denied basic human needs and requirements. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Accordingly, for these reasons, Plaintiff fails to state an Eighth Amendment claim regarding alleged verbal harassment and his placement in segregation.

### 4. Denial of Medical Care

Plaintiff alleges that, following the July 5, 2022, attack, Plaintiff was taken to segregation, rather than to the medical department. (ECF No. 1, PageID.2.) He also claims that he "continuously complained about concussion like symptoms" while in segregation from July 8, 2022, through

14

August 9, 2022, but was denied medical care. (*Id.*, PageID.3, 6.) Plaintiff does not identify any Defendants who were involved in this lack of medical care.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Because Plaintiff fails to name any Defendants when setting forth his allegations regarding medical care or lack thereof, any intended Eighth Amendment claim regarding Plaintiff's medical care will be dismissed.

### C. Fourteenth Amendment

Plaintiff also indicates that he intends to bring claims for violation of his Fourteenth Amendment rights. (ECF No. 1, PageID.2.) "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

### 1.     Placement in Segregation

Plaintiff alleges that, as a result of the actions of Defendants Batho, Plumm, and Bigger, Plaintiff was placed in segregation from July 8, 2022, until August 9, 2022, "depriving [Plaintiff] of his right to liberty." (ECF No. 1, PageID.3.) However, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), *overruled on other grounds by Edwards v. Balisok*, 520 U.S. 641 (1997), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484–86. Similarly, the Sixth Circuit has held that mere placement in administrative

16

segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey*, 62 F.3d at 790-91; *see Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation was not atypical and significant).

Here, Plaintiff does not allege that Defendants confined Plaintiff to segregation for an extended period of time; instead, Plaintiff alleges that he was held in segregation at URF for just over a month: from July 8, 2022, until Plaintiff's transfer to a new facility on August 9, 2022. Although Plaintiff alleges in a conclusory manner that his time in segregation was akin to a "pun[i]tive disciplinary prisoner" (ECF No. 1, PageID.3), he alleges no facts to suggest that his placement there was an atypical and significant deprivation beyond the disciplinary segregation in *Sandin* found not to implicate any liberty interest. Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment due process claim regarding his placement in segregation.

### 2. Interference with the Grievance Process

Plaintiff alleges that Defendant McLean refused to provide Plaintiff with a step two grievance appeal form, interfering with Plaintiff's ability to use the MDOC's grievance process. (ECF No. 1, PageID.3.) The Court construes this as a Fourteenth Amendment due process claim.

Courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th

17

Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Plaintiff cannot raise a Fourteenth Amendment claim based upon interference with the same. The Court will dismiss Plaintiff's due process claim premised upon an interference with Plaintiff's ability to file grievance(s).

### III. Motion to Appoint Counsel

As noted above, Plaintiff has filed a motion to appoint counsel. (ECF No. 5.) Plaintiff contends that he is unable to afford counsel, he is physically and mentally ill, the issues in the case are complex, and Plaintiff has limited or no knowledge of the law and civil litigation. (*Id.*, PageID.49.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 5) will, therefore, be denied.

### CONCLUSION

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 5).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: October 12, 2023        /s/ *Maarten Vermaat*
                               Maarten Vermaat
                               United States Magistrate Judge